31 C.C.P.A. (Patents)

## KUHN v. JENNINGS.

### Patent Appeal No. 4853.

Court of Customs and Patent Appeals.

April 4, 1944.

Rehearing Denied April 27, 1944.

Frank H. Hubbard, of Milwaukee, Wis. (W. C. Lyon, of Milwaukee, Wis., and Edwin R. Hutchinson, of Washington, D. C., of counsel), for appellant.

O. H. Eschholz, of East Pittsburgh, Pa. (Ralph H. Swingle and F. W. Lyle, both of East Pittsburgh, Pa., Jo. Baily Brown, of Pittsburgh, Pa., and Raymond Jones, of Washington, D. C., of counsel), for appellee.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

JACKSON, Associate Judge.

This is an appeal in an interference proceeding wherein the Board of Appeals of the United States Patent Office affirmed a decision of the Examiner of Interferences awarding priority of invention of the subject matter of the ten counts in issue to appellee Jennings.

The interference involves an application of appellant, Serial No. 708,804, filed January 29, 1934, for a patent for "Circuit Controlling Devices", and an application of appellee, Serial No. 712,577, filed February 23, 1934, for a patent on "Small Circuit Breakers." Appellant has assigned his application to Cutler-Hammer, Inc., of Milwaukee, Wisconsin, and appellee's assignee is the Westinghouse Electric and Manufacturing Company, of East Pittsburgh, Pa.

Appellee being the junior party had the burden of proving priority of invention by a preponderance of the evidence.

Count 1 is sufficiently illustrative of the invention and reads as follows:

"1. In a circuit interrupter, means for opening and closing the circuit including a contact element movable about a pivot to open and closed positions, a pivoted operating member, a spring connected at one end to move said contact element about its pivot and connected at its other end to said operating member, said spring being movable by said operating member back and forth across the pivot of said contact element to thereby alternately bias said contact element to move to open and close the circuit with a snap action, and means responsive to a predetermined condition for applying a force to said spring at a point spaced from the end thereof connected to said operating member for moving said spring across the pivot of said contact element and thereby causing said spring to bias said contact element to move to open position even though the end of the spring connected to said operating member is held to prevent movement of said end of the spring."

The subject matter in issue relates to a circuit interrupter device for controlling an electric circuit, and comprises a handle, which may be manually operated as in an ordinary electrical switch, to open and close the circuit, and also bimetallic thermal responsive means for interrupting or opening the circuit under overload conditions. The circuit interrupter consists of a toggle snap switch operable in either direction by the movement of a spring passing the pivot points of the toggle arms. The thermal responsive means causes the spring to pass the pivot points when the circuit is overloaded, thereby opening the contact members. The "on" position of the device, after the circuit has been opened by the thermal responsive means, may be restored by moving the manually operable handle from the "off" to the "on" position.

Appellant in his preliminary statement alleged conception of the invention and disclosure of it to others with respect to counts 4, 5 and 6 as between March 2, 1932 and October 22 of the same year, and reduction of the invention to practice between October 24, 1932 and November 4, 1932. With respect to counts 1, 2, 3, 7, 8, 9 and 10 appellant alleged conception of the invention and disclosure of it to others in the latter part of 1932 or prior to January 23, 1933, and reduction to practice of the invention with respect to counts 1, 7 and 8 prior to January 23, 1933, and as to counts 2, 3, 9 and 10 between January 23, 1933 and April 4, 1933.

Appellee in his preliminary statement alleged conception of the invention and disclosure of it to others as between September 15, 1932 and October 30, 1932, and reduction of it to practice during the month of November 1932.

Both parties took testimony.

The interference as declared involved a single count which was a claim from the application of appellee. Appellant moved to dissolve the interference on the grounds that the count was unpatentable and not readable upon appellee's disclosure. Appellee moved to amend by adding 15 additional counts. The Primary Examiner held the count to be readable on the disclosures of both parties, but held it to be unpatentable over the prior art. He granted appellant's motion to dissolve and also granted appellee's motion to add 14 of the 15 counts. Appellant petitioned for rehearing by the Primary Examiner and contended that appellee was not entitled to make the proposed counts in view of appellee's patent No. 2,070,305, February 9, 1937, application for which, Serial No. 705,071, was filed January 3, 1934, on the ground of attempted double patenting. Upon that petition the motion to dissolve was granted and the motion to amend denied.

From that decision an appeal was taken to the Board of Appeals, and the decision of the Primary Examiner granting the motion to dissolve was affirmed, and his decision denying the motion to add the proposed 14 counts was reversed. Appellant thereupon presented an amendment to his application adding 10 of the proposed 14 claims, which are the ten counts here in issue. The interference was accordingly redeclared.

Notice was duly given under rule 154(e) that appellee would use as evidence official records of the Patent Office, including the file history of his application, Serial No. 705,071, filed January 3, 1934, which issued as patent No. 2,070,305 on February 9, 1937, for the purpose of showing constructive reduction to practice of the invention defined by the counts.

■ Appellee contended before the Examiner of Interferences that he was the senior party by reason of the filing date of his said patent. Since he made no motion

to shift the burden of proof the examiner held that although the patent would be fully considered it did not change appellee's status as the junior party.

The record shows that appellee at the time of taking testimony was employed by the Westinghouse Electric and Manufacturing Company. In 1931 and since he was employed as assistant manager of the Appliance Engineering Department. He started to work on smaller and cheaper circuit breakers than were then being made by his company in August 1931 and continued at such work until February 1932, during which time a number of designs of circuit breakers were made up but they "were not quite what was wanted." No other work on circuit breakers was done after February 1932 until August of that year. Then the work was resumed and eventuated in a circuit breaker which is described and illustrated in three paper exhibits of appellee dated October 24, 1932. Those exhibits were received by the attorney for appellee on October 26, 1932. One of said exhibits, marked Exhibit A–3, is a sketch made by appellee, held by the examiner to support the limitations of the counts. The testimony with respect to this exhibit was fully corroborated by appellee's attorney. Therefore, the examiner held that appellee established a conception of the invention as of October 26, 1932.

In the early part of November 1932 a device conforming to that disclosed and described in the said three exhibits was constructed under the supervision of appellee. It was received in evidence. It appears that the device was tested, but it was found that when the operating handle was held down the switch would return to closed position after the bimetallic element had cooled. While appellee contended that the device was useful for some purpose, the examiner stated that the circumstances indicated otherwise. He held that the device did not establish utility for free tripping or as an automatic device, and consequently determined that its testing, in view of the fact that its operation was considered faulty, did not prove such utility as was necessary to establish reduction to practice. The examiner further rejected the tests as not being sufficient to fully establish utility in view of the testimony showing that in testing such devices they are subjected to an overload of at least 600 per cent followed by an endurance test of 6000 operations, after which the breaker is subjected to a short circuit with a current of from 3000 to 5000 amperes. It appears that the breaker of the said device was not tested in accordance with the said endurance test or the short circuit test, and accordingly the examiner held that no reduction to practice was established by the making and testing of the device.

There was no further evidence for appellee concerning the making or testing of other devices, but his patent above referred to was introduced as evidence of a constructive reduction to practice of the involved invention as of January 3, 1934, the filing date of the application for said patent.

■ The examiner held there could be no question of double patenting between the claims of appellee which are the counts herein and the claims of his patent for the reason that the latter are for a different invention than the counts in issue, and the disclosure of the patent supports the structure defined by the counts.

Appellant contended that counts 2, 6, 9 and 10 were not supported by the disclosure of the patent of appellee in that they are expressly directed to automatic return of the operating member to an "off" position following the automatic tripping or opening of the circuit, and that such structure is not disclosed in appellee's patent. The examiner disagreed with that contention, pointing out that those counts are supported by the disclosure of the patent when the lever of the patent device which closes the circuit through the spring by the thermal responsive or bimetallic means is considered to be the operating member. The examiner recognized a limitation contained in count 9 that "said handle member when released after being held in closed position being automatically moved to open position by said tension spring", but observed that the handle member of the device of the patent, when released from the latch which held it in the "on" position even when the thermal means had interrupted the circuit, would return to open position.

The examiner held that the patent of appellee fully supports all of the limitations of all the counts in issue and awarded appellee constructive reduction to practice of the involved invention as of January 3, 1934.

The device of appellant is an electrical circuit interrupter used as a control on a refrigerator. It appears that on October 22, 1932, appellant made a sketch for the making of a sample of an apparatus modifying one that was then in use by his company to provide means for holding electrical contacts open in the event of an overload current. The examiner held there was no corroboration as to the making of that sketch. On November 4, 1932 appellant sent a memorandum to the manager in charge of the refrigeration department of his company and a sample of a device, said to be made from the sketch, and constructed for the purpose of holding open the contacts when resisting the overload by means of a pivoted lever. The memorandum stated that with the arrangement of a pivoted lever as in the sample device it was impossible to hold the contacts closed under any overload condition but that by reason of the size of the arc gap the design was not suitable for a direct current rating, and that the "free tripping feature" on a refrigerator° control was an unnecessary complication. It further stated that since one economical solution had been worked out in accordance with the said sample no further activity in the matter would be planned. It was testified that the memorandum and sample had been received by the manager of the refrigeration department within three days after November 4, 1932, and the examiner held that the date of making the device was properly established at least as early as November 7, 1932.

Appellant contended that that device proved a conception of the invention defined by counts 4, 5 and 6. The examiner held that such was not the case. After having pointed out that that device was not proved to be a conception of the invention as defined in those counts, the examiner held that, even if conception were conceded as contended for by appellant, the device had not been sufficiently tested to establish a reduction to practice. He stated that while appellant had testified he had made a test of the device such testimony was uncorroborated, and that "The mechanic does not recall the tests made and the engineer who was there at the time was not available * * *."

The manager of the refrigeration department of appellant's company made a test of that device but only to the extent of seeing that it worked freely, and the current used was 6⁹⁄₁₀ amperes. The examiner stated that the normal current load of the meter in connection with which appellant's device was to be used is 4½ to 5 amperes, and therefore a test using only a slight overload current was not sufficient to establish the utility of the device, which might be required to handle an extreme overload current. The examiner stated, "Particularly is this so when it appears that the device had only a 1/32nd inch clearance between the contacts, much less than had previously been present in the overload trip devices produced by the Cutler-Hammer Company." Therefore, the examiner held that the utility of the device for the purpose intended had not been sufficiently established by the testimony, and accordingly the invention had not been reduced to practice.

Appellant, after having made the device hereinbefore mentioned, continued his work, and another device and drawing were made. A drawing bearing date of February 15, 1933 was held to fully support all of the subject matter of the counts, and appellant was therefore held by the examiner to have established a conception of the invention at least as early as that date.

The record shows that devices made in accordance with appellant's conception went into production and were sold, possibly, the examiner stated, in the latter part of 1934. Appellant contended that because of the testimony with respect to production and sale he was entitled to an actual reduction to practice at least as early as 1933. The examiner did not agree with that contention, and stated:

"* * * While it appears that in the latter part of 1934 commercial devices were sold, it is not believed that any assumptions as to the practical utility of the device at any date prior to the commercial production and sale are warranted. Certainly it would seem that a company such as the Cutler-Hammer Company if it had made current and overload tests on the device prior to this time, would have kept some record thereof. However, no such record appears and no assumptions of utility prior to commercial sale can be indulged in. Accordingly it does not appear that Kuhn has established any reduction to practice prior to his record date of January 29, 1934."

Answering a petition for reconsideration, the examiner stated that while the

device of appellee may not be sufficiently successful to constitute an actual reduction to practice that fact did not affect the allowability of his application.

The Board of Appeals in its decision stated that appellee had applied the counts to his structure by reference character, and that appellant did not make any special application of the counts to show wherein appellee's reading of them was improper. The board remarked that appellant had stressed, as to the reading of the counts both on the involved application of appellee and on his patent, that no free tripping circuit breaker is present in appellee's application or patent and that the counts cover such circuit breaker. It stated that appellant's definition of a " 'trip free' breaker appears to be a breaker which can be opened or closed manually and which will open automatically even though the manual means is held in closing position and will not close automatically when it has tripped", and quoted from the appellee's application to show that it clearly disclosed in so many words a trip free breaker. The board stated that the counts were drawn broadly, that they should be given a broad interpretation, and when so interpreted they read upon the involved application of appellee, his device exhibit, and his patent. The board agreed with the date of conception of the invention by appellant awarded him by the examiner, but with respect to reduction to practice it stated that appellant in the year 1933 had made several forms of his devices and that many changes were made therein, during the year 1933 and 16 during the year 1934, but that while tests were alleged to have been made it was not shown which form of the device was tested. The board referred to an exhibit of appellant which consists of five pages entitled "Experimental Test Report." No test is shown on that exhibit in which the manually operable handle or button was held in the "on" position to determine if the contacts would open in the presence of an overload current. This, the board stated, was admitted by appellant.

Therefore the board held that appellant had failed to prove any actual reduction to practice prior to his filing date.

■ We can find no error in the decisions of the tribunals below. Appellee has proved by well-corroborated evidence his conception of the invention defined by the counts as of October 26, 1932, and even though his device exhibit be considered faulty, in our opinion it would not follow that the device disclosed by him and defined by the counts is inoperable.

Appellee in his brief before us has applied by reference character every limitation of the counts to the device disclosed in his application and that disclosed in his patent. There is no showing by appellant here that such application made by appellee is wrong or improper in any particular. The counts unquestionably read upon the involved application of appellee and upon his patent.

Appellant vigorously contends that appellee is not entitled to the filing date of his patent for the reason that the application here involved was renewed on July 7, 1938, more than two years subsequent to the original allowance on July 31, 1935 of the application for his patent. It appears that the invention of appellee's patent was for an automatically reclosing circuit breaker, whereas the involved application of appellee is for a different invention. The Board of Appeals found this to be the case in holding there was no double patenting, and this holding has not been questioned by appellant in this appeal. The renewal of the involved application filed July 7, 1938 is not a renewal of the application which matured into appellee's patent, but a renewal of his application Serial No. 712,577, which was allowed on July 7, 1937. The renewal was filed on July 7, 1938, so that the one year requirement of the former renewal statute, Section 4897, R.S., was complied with.

In view of what has been said, it is not necessary to further lengthen this opinion by discussing other matters set out in the briefs or the cases which have been cited.

■ Appellee filed a motion suggesting a diminution of the record by adding the drawings and specification of his application for patent No. 2,070,305 as filed, together with the notice of allowance and petition for renewal therein, and a portion of appellant's brief before the Board of Appeals on the consideration of the motions above referred to. The motion was granted subject to an order of the court that the costs of printing the additional matter requested by appellee should be taxed on final decision.

We are of opinion that the additional matter so certified to the court was unnecessary to a proper decision of the issue.

Accordingly the cost of printing the same will be taxed against appellee.

The decision of the Board of Appeals is affirmed.

Affirmed.